1

2

3

4

5

6

7                    UNITED STATES DISTRICT COURT

8                    EASTERN DISTRICT OF CALIFORNIA

9

10  DIANE MORGAN, individually       No.  2:17-cv-01771-JAM-CMK
    and on behalf of all others
11  similarly situated,

12              Plaintiff,          **ORDER GRANTING DEFENDANT'S
                                    MOTION TO DISMISS AND COMPEL
13       v.                         ARBITRATION**

14  GLOBAL PAYMENTS CHECK
    SERVICES, INC.,
15
                Defendant.
16

17       Plaintiff Diane Morgan ("Plaintiff") brings this putative

18  class action against Defendant Global Payments Check Services,

19  Inc. ("Global Payments" or "Defendant") alleging invasion of

20  privacy for recording her and other class members' cellphone

21  conversations with Defendant.  See Compl. ¶¶ 1, 40-41, ECF No. 1.

22  Defendant moves to compel Plaintiff to submit her class claim to

23  arbitration and to stay or dismiss the case.  See Mem., ECF No.

24  13.  Plaintiff opposes.  See Opp'n, ECF No. 16.  For the reasons

25  below, the Court grants Defendant's motion.[1]

26  _____

27  [1] This motion was determined to be suitable for decision without
    oral argument.  E.D. Cal. L.R. 230(g).  The hearing was
28  scheduled for January 30, 2018.

                                1

I.  FACTUAL BACKGROUND

On September 17, 2016, Plaintiff visited a casino that participates in Defendant's VIP Preferred Program ("VIP Program").  Decl. of Dawn Ray-Schroyer ("Ray-Schroyer Decl.") ¶¶ 1, 7, ECF No. 13-1.  The VIP Program allows "customers to electronically debit funds through certain merchants with funds guaranteed by Global Payments entities[.]"  Id., ¶ 1.  Before using the VIP program at the participating casino, Plaintiff signed Defendant's VIP Preferred Check Cashing & EFT Enrollment Form (the "Enrollment Form").  Id., Ex. A.  The Enrollment Form states:

> I acknowledge and agree that I have received the written Terms of Service (TOS) for the Global Payments' VIP Preferred Program.  As a condition to my enrollment and continuing participation in the VIP Preferred Program, I agree to all terms and conditions contained within the TOS, which may be updated from time to time.  I further acknowledge that I have received a copy of the VIP Preferred Program Privacy Policy, which along with the current TOS, can be found at www.vippreferred.com.

Id.  Plaintiff denies reviewing or receiving a copy of the referenced Terms of Service ("TOS") or visiting the www.vippreferred.com website prior to filing this action.  Decl. of Diane Morgan In Support of Pl.'s Opp'n ("Morgan Decl."), ¶¶ 4-5, ECF No. 16-1.  But Plaintiff does not contest that she signed the Enrollment Form.  See id.

The link to www.vippreferred.com always has the most current version of the TOS and was printed on the Enrollment Form, which allowed members to review Defendant's TOS on a mobile device before signing the Enrollment Form or at any time thereafter.  Ray-Schroyer Decl. ¶ 6.  The TOS in place when Plaintiff signed

1    the Enrollment Form contained an arbitration provision (the
2    "Arbitration Clause").  Id., Ex. B.  The Arbitration Clause
3    remained substantially unchanged as of November 2017.  Id., Exs.
4    B, C.

5        The Arbitration Clause states, in relevant part, that "[a]ny
6    dispute arising out of or relating to the TOS or the Services,
7    regarding Global Payments or its Service Providers or any
8    affiliate thereof, shall be finally resolved by arbitration
9    administered by the American Arbitration Association under its
10   Commercial Arbitration Rules [.]"  See Ray-Schroyer Decl. Exs. B,
11   C.  The Arbitration Clause also states that "[t]he arbitrator
12   shall decide the dispute in accordance with the substantive law
13   of the state of Florida."  Id.

14       In December 2016 and January 2017, Plaintiff received five
15   separate calls on her cellphone from Defendant for allegedly
16   defaulting on her obligations to re-pay a portion of the funds
17   advanced to her using the VIP Program.  Compl. ¶¶ 8-13; Ray-
18   Schroyer Decl. ¶¶ 9-10.  Plaintiff alleges that those calls were
19   recorded without Plaintiff's knowledge or consent in violation of
20   California Penal Code § 632.7.  Compl. ¶ 13.

21

22                          II.   OPINION

23       Defendant moves to dismiss (or alternatively, stay) and
24   compel arbitration, arguing Plaintiff's signing the Enrollment
25   Form constitutes an agreement to arbitrate any dispute relating
26   to the TOS or the VIP Program.  See Mem. at 1.  Defendant further
27   contends that the parties "expressly agreed to delegate the
28   threshold issues of arbitrability (including validity and scope)

                                3

to the arbitrator." Mem. at 1. The Court agrees.

The Federal Arbitration Act ("FAA") specifies that arbitration provisions are valid and enforceable, representing "a liberal federal policy favoring arbitration, and the fundamental principle that arbitration is a matter of contract." AT&T Mobility LLC v. Concepcion, 131 S. Ct. 1740, 1742 (2011) (internal quotation marks and citations omitted). Section 4 of the FAA allows a party to an arbitration agreement to petition a district court for an order directing arbitration. 9 U.S.C. § 4. It is a basic principle of federal law that a party can only be compelled to arbitrate a dispute if he or she agreed to submit that dispute to arbitration. AT & T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 648-49 (1986).

A court is normally tasked with two gateway issues when deciding whether to compel arbitration under the FAA: "(1) whether a valid agreement to arbitrate exists, and if it does, (2) whether the agreement encompasses the dispute at issue." Chiron Corp. v. Ortho Diagnostics Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000). But the parties can agree to expressly delegate these gateway issues to an arbitrator, in which case an arbitrator, rather than a court, must decide the issues. Brennan v. Opus Bank, 796 F.3d 1125, 1130 (9th Cir. 2015) (internal quotation marks and citation omitted); see also First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943 (1995); Gillette v. First Premier Bank, No. 3:13-cv-432-LAB-RBB, 2013 WL 3205827, at *1-2 (S.D. Cal. June 24, 2013).

If the parties delegate the threshold issues to an arbitrator, the FAA leaves no place for the exercise of

4

discretion by a district court, but instead mandates that the
district court direct the parties to proceed to arbitration on
those issues.  See Brennan, 796 F.3d at 1130; see also, e.g.,
Gillette, 2013 WL 3205827, at *2 (explaining that "[g]iven the
parties' agreement to arbitrate gateway issues of arbitrability,
there is actually very little here for the Court to decide" and
compelling arbitration as to all gateway issues); Roszak v. U.S.
Foodservice, Inc., 628 F. App'x 513, 514 (9th Cir. 2016)
(affirming order compelling arbitration because "the parties
incorporated the [AAA} rules into their agreement and therefore
agreed to arbitrate the question of arbitrability."); Bank of
America, N.A. v. Michiletti Family P'ship, No. 08-02903 JSW, 2008
WL 4571245, at *6 (N.D. Cal., Oct. 14, 2008) (where parties
agreed to arbitrate the issue of arbitrability, the court was
divested of its authority and compelled arbitration).

The Court must analyze the underlying contract to decide
whether the parties have "clearly and unmistakably" committed the
question of arbitrability to the arbitrator.  Brennan, 796 F.3d
at 1130 (internal quotation marks and citations omitted);
Michiletti Family P'ship, 2008 WL 4571245, at *6; see also Rent-
A-Center, West, Inc. v. Jackson, 561 U.S. 63, 70 (2010).
Parties' incorporation of the American Arbitration Association
Commercial Arbitration Rules ("AAA Rules") into an agreement
constitutes clear and unmistakable evidence that the parties
agreed to arbitrate arbitrability.[2]  Brennan, 796 F.3d at 1130;

[2] The Court denies Defendant's request for judicial notice of the
AAA Rules as moot since considering that document is unnecessary
for the disposition of Defendant's motion.

see also _Madrigal v. New Cingular Wireless Servs., Inc._, No. 09-CV-00033-OWW-SMS, 2009 WL 2513478, at *5 (E.D. Cal. Aug. 17, 2009); _Fadal Machining Centers, LLC v. Compumachine, Inc._, 461 F. App'x 630, 632 (9th Cir. 2011).

Finally, signing an acknowledgment form that refers to another document containing an arbitration provision is sufficient to form an agreement to arbitrate. See _Garcia v. GMRI, Inc._, No. 2:12-cv-10152, 2013 WL 10156088, at *4, 7 (C.D. Cal. May 17, 2013) (compelling arbitration where "[b]y signing the [Acknowledgment] Form, Plaintiff signified that she received, read, and agreed to the terms of the DRP Booklet[,]" which contained the relevant arbitrability provision); see also _Lucas v. Hertz Corp._, 875 F.Supp.2d 991, 998-99 (N.D. Cal. 2012) (compelling arbitration where plaintiff signed a half-page car rental agreement acknowledging and agreeing to the terms of a separate "folder jacket" document, which included the arbitration provision).[3] A plaintiff's failure to remember seeing the terms of an agreement is insufficient to dispute that the plaintiff agreed to those terms, and a party's failure to read a contract is not a defense to its enforcement. _Blanford v. Sacramento Cty._, 406 F.3d 1110 n.3 (9th Cir. 2005); _Stewart v. Preston Pipeline Inc._, 134 Cal. App. 4th 1565, 1589 (2005).

Here, Plaintiff signed the Enrollment Form, acknowledging that she received the TOS for the "Global Payments' VIP Preferred

---

[3] The Court does not rule on Defendant's contention that Florida law applies to this action. Defendant cited sufficient California authority to support its arguments, despite its disagreement with Plaintiff over whether Florida law or California law should apply. Reply at n.1, ECF No. 19.

Program" and "agree[d] to all terms and conditions contained within the TOS, which may be updated from time to time." By signing the Enrollment Form, Plaintiff agreed to the terms of the TOS. See Garcia, 2013 WL 10156088, at *4, 7; see also Lucas, 875 F. Supp. 2d at 998-99; Cordas v. Uber Techs., 228 F.Supp.3d 985, 988-91 (N.D. Cal. 2017) (holding plaintiff's agreement to Uber's terms and conditions [which included arbitration clause] were dispositive, and all other issues—including validity and scope— were for the arbitrator to decide). By agreeing to the TOS, Plaintiff agreed to arbitrate under the AAA Rules and thereby clearly and unmistakably agreed to arbitrate the issue of arbitrability. Brennan, 796 F.3d at 1130; see also Madrigal, 2009 WL 2513478, at *5; Fadal Machining Centers, LLC, 461 F. App'x 630 at 632.

　　　　Plaintiff counters that the Court cannot compel arbitration because she did not agree to the TOS. Opp'n at 4. Plaintiff denies reviewing or receiving a copy of the TOS and denies visiting Defendant's website, www.vippreferred.com, before filing this action. Morgan Decl. ¶¶ 4-5. To support the argument that her alleged lack of awareness of the TOS justifies finding no agreement between the parties, Plaintiff cites Windsor Mills, Inc. v. Collins & Aikman Corp., 25 Cal. App. 3d 987, 990-91 (1972); Stagner v. Luxottica Retail North America, Inc., No. C 11-02889, 2011 WL 3667502, at * 3 (N.D. Cal. Aug. 22, 2011); and Marin Storage & Trucking, Inc. v. Benco Contracting and Engineering, Inc., 89 Cal. App. 4th 1042, 1049-50 (2001). Plaintiff's reliance on these cases is misplaced. In Windsor and Stagner, unlike here, the plaintiffs did not sign forms that

referenced or incorporated arbitration provisions. See Windsor, 25 Cal. App. 3d at 990-91; see also Stagner, 2011 WL 3667502 at *2. In Marin, the California Court of Appeal actually rejected the plaintiff's argument that the contracts at issue were invoices instead of binding contracts. See Marin, 89 Cal. App. 4th at 1049-50.

In contrast, here, Plaintiff does not contest that she signed the Enrollment Form, which states that Plaintiff received and agreed to the TOS's terms and conditions. See Morgan Decl.; See Ray-Schroyer Decl. Ex. A. And Plaintiff's failure to recall, and denial of, receiving the TOS before she signed the Enrollment Form does not negate her agreement to the TOS's terms and conditions. See Blanford, 406 F.3d at n.3; See also Stewart, 134 Cal. App. 4th at 1589.

Plaintiff may now wish that she did not sign the Enrollment Form. But if wishes were horses, then beggars would ride. The Court finds that Plaintiff's signature on the Enrollment Form means she agreed to arbitrate arbitrability, despite what she may not currently recall.

Because the parties delegated arbitrability to an arbitrator, the Court's inquiry ends and it must, as it does here, direct the parties to proceed to arbitration so an arbitrator can determine arbitrability. See Brennan, 796 F.3d at 1130; see also, e.g., Gillette, 2013 WL 3205827, at *2; Roszak, 628 F. App'x at 514; Michiletti Family P'ship, 2008 WL 4571245, at *6.

///

///

III.   SANCTIONS

The Court issued its Order re Filing Requirements ("Order") on August 24, 2017.  ECF No. 4-2.  The Order limits memoranda in support of and in opposition to motions to dismiss to fifteen pages and reply memoranda in support of motions to dismiss to five pages.  The Order also states that an attorney who exceeds the page limits must pay monetary sanctions of $50.00 per page and that the Court will not consider any arguments made past the page limit.  Plaintiff's opposition memorandum exceeds the page limit by three pages.  The Court has not considered any arguments made after page fifteen of the opposition brief.  The Court ORDERS Plaintiff's counsel to pay $150.00 in sanctions. Sanctions shall be paid to the Clerk of the Court within five days of the date of this Order.

IV.   ORDER

For the reasons set forth above, the Court GRANTS Defendant's motion to compel arbitration and dismisses this action without prejudice.

IT IS SO ORDERED.

Dated: February 14, 2018

_____
JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE